## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ISMAIL I.,

        Plaintiff,

    v.

KILOLO KIJAKAZI,
  ACTING COMMISSIONER OF SOCIAL
  SECURITY,[1]

        Defendant.

No. 19 CV 196

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Ismail I. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court denies plaintiff's request to reverse the SSA's decision and remand this case to the agency [38],[2] grants the Acting Commissioner of Social Security's (Acting Commissioner) motion for summary judgment [40], and affirms the SSA's decision.

### Procedural Background

In early 2014, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, with the exception of citations to the administrative record [19-1], which refer to the page numbers in the bottom right corner of each page.

income, both alleging an onset date of December 23, 2013. [19-1] 230-38. Plaintiff's claims were denied initially and on reconsideration. [*Id.*] 150-54, 163-66. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on December 8, 2016. [*Id.*] 71-105. In a decision dated February 8, 2017, the ALJ ruled that plaintiff was not disabled. [*Id.*] 57-66. The Appeals Council denied review on January 24, 2018, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955, 404.981.

After receiving an extension of time to file a civil action [19-1] 7-8, plaintiff timely appealed to this Court [1]. The Court has jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g), and the parties have consented to my jurisdiction over the case in accordance with 28 U.S.C. § 636(c). [22, 26].

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform

any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

Plaintiff, who was fifty-eight years old at the time of his alleged onset date, *see* [19-1] 106, sought disability benefits and supplemental security income on the basis of coronary heart disease, chronic obstructive pulmonary disease (COPD), diabetes, obesity, hyperlipidemia, hypertension, reduced visual acuity, and sleep disorder. [*Id.*] 60.

At step one of his written decision denying plaintiff's claims, the ALJ found that plaintiff had not engaged in substantial gainful employment since the alleged

onset date. [19-1] 59. At step two, the ALJ ruled that plaintiff had four severe impairments: coronary heart disease, COPD, diabetes mellitus, and obesity. [*Id.*]. The ALJ also determined that plaintiff had the following non-severe impairments: hyperlipidemia, hypertension, reduced visual acuity, and sleep disorder. [*Id.*] 60. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of any listed impairment. [*Id.*] 60-61.

Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work, except that plaintiff could only occasionally climb ramps or stairs but could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could not be exposed to work at unprotected heights or around moving mechanical parts; and could only occasionally have exposure to humidity and wetness, extreme cold or heat, or dusts, odors, fumes, and other pulmonary irritants. [19-1] 61-65.

At step four, the ALJ concluded that plaintiff was capable of performing his past relevant work as a travel agent, which did not require him to perform any work-related activities that were precluded by his RFC. [19-1] 65-66. Because this ruling meant that plaintiff was not disabled, *see* 20 C.F.R. § 404.1520(f), the ALJ did not proceed to step five.

Plaintiff–who was represented by counsel during administrative proceedings and at the hearing before the ALJ, *see* [19-1] 156 (plaintiff's counsel's appearance form, dated August 28, 2014), but is proceeding pro se in this Court–filed a one-page letter setting forth the reasons he contends warrant reversing and remanding the

4

ALJ's decision. [38]. Plaintiff's letter appears to assert that (1) the ALJ's decision was based on an incomplete set of medical records, which did not include records from plaintiff's doctor of "18-20 years, Dr. Destani," or records predating his open-heart surgery in 2013; (2) he cannot work in a seated position "for more than 15-20 minutes without raising my legs and resting" or else his "legs will start to swell and turn blue, along with raising my blood pressure and heart rate"; (3) he was diagnosed with lung cancer "[i]n the last year"; and (4) his dizziness, forgetfulness, and sleep apnea affect his balance and other activities. [*Id.*] 1. After the Acting Commissioner filed her motion for summary judgment, plaintiff filed a short reply brief reiterating these points. [42].

In analyzing plaintiff's case, the Court is mindful both of its obligation to "construe *pro se* filings liberally," and the rule that "even a *pro se* litigant like the plaintiff is required to 'present a cogent legal argument with citations to authority and relevant parts of the record.'" *Alexander K. v. Kijakazi*, No. 20 C 5819, 2021 WL 4169570, at *8 (N.D. Ill. Sept. 14, 2021) (quoting *Greenwell v. Saul*, 811 F. App'x 368, 370 (7th Cir. 2020)).

## A. The Alleged Incompleteness Of The Administrative Record Does Not Provide A Basis for Remand.

Plaintiff appears to argue that the ALJ based his decision on an incomplete record because the records from plaintiff's doctor of "18-20 years," Dr. Destani, were not before the ALJ. [38] 1. Plaintiff also contends that the ALJ should have "review[ed] all my medical records, before and after my open-heart surgery, because all the illnesses . . . are in those medical records." [*Id.*].

5

The Acting Commissioner responds that there are no gaps in the administrative record, and the record was sufficient to allow the ALJ to decide whether plaintiff was disabled. [41] 3-5. Regarding Dr. Destani's records, the Acting Commissioner observes that neither plaintiff nor his counsel alerted the ALJ that any relevant records from Dr. Destani were not included in the administrative record. [*Id.*] 4. As for the records predating plaintiff's heart surgery, the Acting Commissioner observes that plaintiff suffered a heart attack on December 23, 2013 (which is also plaintiff's alleged onset date), and that plaintiff had open-heart surgery shortly thereafter. [*Id.*] (citing [19-1] 434-35). The Acting Commissioner contends that, "[w]hile medical records predating December 23, 2013 may shed light on plaintiff's condition prior to his heart attack, they would not shed much light on his condition following surgery"–which was the period at issue in plaintiff's applications and the ALJ's decision. [*Id.*] 4-5.

The Court concludes that plaintiff has not substantiated his claim that the administrative record is incomplete. Furthermore, plaintiff has not demonstrated that any alleged gap in the record would warrant a remand to the agency.

Under the relevant Social Security regulations, the "case record must be complete and detailed enough to allow [the ALJ] to make a determination or decision about whether [the claimant is] disabled or blind." 20 C.F.R. § 416.912(a)(2). The regulations also require the ALJ to "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [claimant] filed [his] application." 20 C.F.R. § 416.912(b). But "the ALJ's duty to prepare a complete record

has natural limits. Taking 'complete record' literally would be a formula for paralysis because a claimant can always obtain more examinations and medical opinions." *Charles F. v. Saul*, No. 18 C 618, 2019 WL 3776656, at *5 (N.D. Ill. Aug. 12, 2019) (some internal quotation marks omitted). "Therefore, the record is complete as a matter of law when it contains adequate information for the ALJ to render a disability decision, regardless of whether the treating doctor has weighed in." *Id.*

Furthermore, the burden is on the claimant to introduce the medical records and evidence that supports his claim of disability. *See Frank R. v. Kijakazi*, No. 19 CV 3223, 2021 WL 4264386, at *13 (N.D. Ill. Sept. 20, 2021) ("the burden of proving that the claimant is disabled always rests with Plaintiff, and it is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability[.]") (internal brackets and quotation marks omitted).

Here, however, neither plaintiff nor his lawyer alerted the ALJ that the record was incomplete because it did not include "18-20 years" worth of records from Dr. Destani. This is so, even though the ALJ held the record open and allowed plaintiff's counsel to submit a different set of medical records (from another of plaintiff's treaters, Dr. Sabi Osman) after the hearing had concluded. *See* [19-1] 74-75; *see also* [*id.*] 57 (ALJ acknowledging that plaintiff "submitted new evidence after the hearing, and it was added to the record . . . [and] considered in rendering this decision"). The Court accordingly finds no basis for concluding that the administrative record was incomplete. *Cf. James G. v. Saul*, No. 18 C 4794, 2019 WL 4305518, at *9 (N.D. Ill. Sept. 11, 2019) (rejecting claim that ALJ failed to develop complete record where

7

plaintiff stated that "he had an opportunity to review the record, had viewed all evidence that had been communicated, and had no objection as to any of the evidence in the record").

Furthermore, the Court observes that the administrative record contains a large number of records and treatment notes from Dr. Destani. *See* [19-1] 338-60 (Dr. Restani's treatment records from December 24, 2013 to January 15, 2014); [*id.*] 385-510 (Dr. Restani's treatment records from February 12, 2012 to March 15, 2014). Indeed, the ALJ specifically discussed the treatment notes from plaintiff's appointments with Dr. Destani in January, February, March, June, and September 2014 in his decision denying plaintiff's claims. *See* [19-1] 62. Dr. Destani also prepared a treating source statement in March 2014, which the ALJ considered but found to be "conclusory and inconsistent with his generally normal examination findings." [*Id.*] 69. Plaintiff does not contend that the ALJ's analysis of those records was inaccurate or supports a remand.

Finally, plaintiff has not shown that medical records predating his 2013 heart attack were relevant to his case.

At the outset, this argument is necessarily doomed by plaintiff's failure to produce the records during the administrative proceedings. *See Abraham A. v. Kijakazi*, No. 20 C 3439, 2022 WL 313758, at *3 (N.D. Ill. Feb. 2, 2022) ("Plaintiff's argument concerning the lack of medical opinions must fail because Plaintiff himself did not offer the medical opinions he now claims were lacking."). In any event, plaintiff's applications alleged that he became disabled on December 23, 2013, the

date on which he had a heart attack–and shortly before he underwent open-heart surgery. *See* [19-1] 434-35. Consistent with 20 C.F.R. § 416.912(b), the administrative record contained medical records dating back to December 5, 2012, more than a year before plaintiff filed his applications. *See* [19-1] 479 (Dr. Destani's December 3, 2012 treatment note). More to the point, the relevant question for the ALJ was whether plaintiff was capable of performing substantial gainful employment on or after December 23, 2013, and the ALJ's decision contains a detailed discussion of medical evidence generated during 2013, 2014, 2015, and 2016 that bore on that issue. *See* [*id.*] 61-65.

For all of these reasons, the Court rejects plaintiff's argument that the administrative record was incomplete.

### B. Plaintiff's Cancer Diagnosis Does Not Provide A Basis For Remand.

In the letter brief he filed on May 26, 2020, plaintiff states that he has "been diagnosed with lung cancer" within "the last year." [38] 1. The Acting Commissioner responds that plaintiff's cancer diagnosis cannot be considered when evaluating the ALJ's decision because (1) there was no evidence respecting the cancer diagnosis before the ALJ, and (2) the cancer diagnosis was made after the period of disability at issue in plaintiff's applications for benefits. [41] 3. In his reply brief, plaintiff contends that "[t]he cancer is not a new issue with my health"; rather, "[i]t was discovered when I had gone to the emergency room with very bad chest pain and the [*sic*] saw fit to preform [*sic*] a chest X-Ray." [42] 2.

The Court agrees with the Acting Commissioner that it cannot consider the cancer diagnosis in deciding whether the ALJ's decision is supported by substantial evidence. First, based on the statements in plaintiff's briefs, it appears that plaintiff was diagnosed with lung cancer in either 2019 or 2020. [38] 1. The hearing before the ALJ, however, occurred in December 2016, and the ALJ issued his decision in this case in February 2017, at least two years before the diagnosis. Given the timing of the administrative proceedings and the diagnosis, plaintiff is necessarily unable to point to any evidence concerning his cancer diagnosis that was part of the administrative record before the ALJ. The Court therefore concludes that it cannot consider plaintiff's cancer diagnosis. *See Miller v. Berryhill*, No. 17 C 235, 2019 WL 480001, at *4 (N.D. Ill. Feb. 7, 2019) ("When reviewing the ALJ's disability determination, the Court cannot consider evidence that was not before the ALJ.").

Second, "[m]edical evidence postdating an ALJ's decision is excluded unless it is 'relevant to the claimant's condition during the relevant time period encompassed by the disability application under review.'" *Robert H. v. Kijakazi*, No. 19 C 7282, 2022 WL 198890, at *4 (N.D. Ill. Jan. 21, 2022) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005)). Here, the evidence at issue–which is not even part of the record–postdates the ALJ's decision, and plaintiff has not provided any reason to think that his cancer impaired his ability to work between the December 23, 2013 onset date and the administrative hearing in December 2016. Therefore, even if this evidence had been part of the record, it would not be relevant to the ALJ's evaluation of plaintiff's disability claims.

10

### C. Substantial Evidence Supports The ALJ's RFC Determination, And The ALJ's Analysis Of Plaintiff's Subjective Symptom Allegations Was Not Patently Erroneous.

Finally, plaintiff contends that he cannot work in a seated position unless he is able to rest and raise his legs every fifteen to twenty minutes. [38] 1. Plaintiff also contends that his sleep apnea and dizziness affect his balance, and that he is so forgetful that he must rely on family members to remind him to take his medication. [*Id.*]. The Court construes these contentions as an argument that the ALJ should have incorporated additional limitation in plaintiff's RFC based on plaintiff's allegations regarding the severity of his symptoms.

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592.

"An ALJ's findings concerning the intensity, persistence, and limiting effect of claimant's symptoms must be explained sufficiently and supported by substantial evidence." *Candice A.Z. v. Kijakazi*, No. 19 C 8174, 2021 WL 3187783, at *9 (N.D. Ill. July 28, 2021).

11

"To determine the credibility of allegations of disabling [symptoms], an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2021). "A claimant's assertions of pain, taken alone, are not conclusive of a disability." *Id.* "When assessing an ALJ's credibility determination, [the Court] do[es] not . . . undertake a de novo review of the medical evidence that was presented to the ALJ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court will not reverse an ALJ's subjective symptom conclusions unless they are "patently wrong, meaning they lack any explanation or support." *Candice A.Z.*, 2021 WL 3187783, at *9; *see also Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding special deference and will overturn it only if it is patently wrong.") (internal quotation marks omitted).

In determining plaintiff's RFC, the ALJ found that the "medical record substantiates [plaintiff's] allegations" respecting the intensity, persistence, and limiting effects of his symptoms only to "a limited extent." [19-1] 62. The ALJ further determined that "the alleged intensity, persistence, and limiting effects of the claimant's symptoms were inconsistent with his diagnostic and examination results, reported noncompliance with treatment, and reported activities." [*Id.*] 64. In particular, the ALJ emphasized that plaintiff had "normal stress tests in February 2014 and March 2015," which the ALJ determined to be "inconsistent with the alleged intensity and persistence of his symptoms, particularly with regard to his heart condition." [*Id.*].

Plaintiff has not pointed the Court to any evidence in the record that would show that the ALJ's findings lack a substantial evidentiary basis or that the ALJ patently erred in evaluating plaintiff's subjective symptom allegations.

First, regarding plaintiff's fatigue, leg pain, and dizziness, the ALJ recognized that plaintiff complained of these symptoms to his "new primary care provider," Dr. Osmani, during a visit in September 2016. [19-1] 62. But the ALJ also found– correctly–that plaintiff denied experiencing these same symptoms at appointments with Dr. Osmani in April, October, and December 2016. [*Id.*]; *see* [*id.*] 902 (December 8, 2016 treatment note stating "no acute distress," normal range of motion in all extremities, and "no joint swelling"); [*id.*] 903-04 (same as to October 27, 2016 treatment note); [*id.*] 909-10 (same as to April 13, 2016 treatment note). Likewise, plaintiff's allegation that remaining in a seated position for more than fifteen or twenty minutes caused his heart rate and blood pressure to spike is inconsistent with the normal results of the cardiac stress tests that were performed in February 2014 and March 2015, on which the ALJ's RFC determination and credibility finding rested. [*Id.*] 373 ("[n]ormal modified Bruce stress test" on February 14, 2014 and plaintiff was "[a]ppropriate for phase 2 cardiac rehabilitation"); [*id.*] 895-99 ("[n]ormal exercise treadmill test with no clinical or electrocardiographic evidence of ischemia" and "[n]ormal myocardial perfusion imaging study" performed on March 4, 2015).[3]

---

[3] Plaintiff states in his reply brief that he failed the last stress test that he was given, which occurred "around 2 years ago." [42] 4. For the same reasons given above, the evidence of this stress test–which would have been administered sometime in 2018–could not have been before the ALJ and is not relevant to the ALJ's decision.

Second, the ALJ found that, despite suffering from diabetes mellitus, plaintiff had not "developed signs of diabetic retinopathy, foot problems, and other associated conditions." [*Id.*] 63. Nor had plaintiff "demonstrated deficits, such as neuropathy, that often accompany poorly controlled diabetes mellitus." [*Id.*]. Similarly, the ALJ noted that plaintiff "consistently denied . . . edema" when he saw Dr. Destani during 2014. [*Id.*]. Plaintiff has not pointed the Court to any evidence in the record that would rebut or contradict the ALJ's findings–let alone evidence supporting plaintiff's claim that he must rest and elevate his legs every fifteen to twenty minutes to prevent his feet from swelling and turning blue.

Third, plaintiff has not pointed the Court to any evidence in the record that would substantiate his claims of forgetfulness or demonstrate that the ALJ should have accounted for this condition by imposing a corresponding limitation in plaintiff's RFC.

Finally, while the ALJ acknowledged that plaintiff had "reduced physical abilities because of the combined effects of his heart condition, COPD, and diabetes mellitus," the ALJ concluded that his RFC determination "accounts for those problems by restricting him to work that requires relatively less lifting or carrying, standing, or walking and by limiting his postural activities." [*Id.*] 64.

In sum, the ALJ provided a reasoned explanation for concluding that plaintiff was capable of performing sedentary work with a number of postural limitations. Plaintiff has not met his burden to show that the RFC determination lacked a substantial basis in the evidence, nor has he shown that the ALJ's subjective

symptom analysis was patently erroneous. In so concluding, the Court does not mean to imply that plaintiff's medical conditions are not serious or do not impose meaningful limitations in his everyday life. The Court concludes only that, under the deferential standard of review that applies in this case, plaintiff has not established that he is entitled to relief.

## Conclusion

For the reasons set forth above, plaintiff's request to reverse the SSA's decision and remand this case to the agency [38] is denied, the Acting Commissioner of Social Security's motion for summary judgment [40] is granted, and the Acting Commissioner's decision denying plaintiff's applications for benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 22, 2022**

15